**Opinion filed October 31, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00153-CV
_____

## IN THE INTEREST OF I.R. AND J.B., CHILDREN

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM 54,119**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order terminating the parental rights of the mother and father of I.R. and J.B. The mother appeals. We affirm.

In her sole issue on appeal, the mother asserts that the evidence is legally and factually insufficient to support the findings that she knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that

endangered the children's physical or emotional well-being. The mother does not challenge the best interest finding.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that the mother committed two of the acts listed in Section 161.001(1): that the mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children and that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. *See* FAM. § 161.001(1)(D), (E). The trial court also found that termination was in the children's best interest. *See* FAM. § 161.001(2).

The children were removed from their father's home in March 2012 after the Department of Family and Protective Services received a priority one call, an immediate emergency, regarding the children. At the time of removal, I.R. was one year old and J.B. was five days old. J.B. had jaundice, and his circumcision

needed cleaning. The mother was incarcerated when I.R. was three months old. She was pregnant at the time she was sent to prison and remained incarcerated when J.B. was born and when the children were removed from the father's home.

The Department's investigator found the father's home to be unsanitary and unsafe for the children. The home had trash and boxes piled up inside; animal feces on the floor; mice feces on the kitchen counter; sharp objects that were accessible to a child; screws and nails lying on the floor; pill bottles lying around; and lots of sharp rusted items outside in the yard, which looked like a junkyard. The father admitted that he was a "hoarder" and had been one all his life. There was ample evidence that the conditions of the home, both inside and outside, endangered the children's physical well-being. There was also testimony that the "mess" at the house looked "like it's been sitting there longer than she's been in prison." Numerous pictures of the inside and outside of the house were admitted into evidence and support the testimony of the Department's employees.

The record shows that the mother was aware that the father had a prior conviction for indecency with a child and could not pass a background check. The father's hair follicle test indicated "constant and heavy use" of cocaine. The father said that he had found the cocaine when he was cleaning his house and that the cocaine belonged to the children's mother.

At the time the children were removed, the mother was incarcerated and, thus, unable to care for her children. At trial, she participated by phone and testified that "this is all news to me, like, everything y'all just stated" about the father. The mother admitted, however, that the father's house had previously had boxes full of stuff that she made him get rid of before she went to prison. The mother asserted, "Over the little period of time I was gone, it just -- he just started bringing stuff back in. I don't know, you know." According to the mother, when she left, the house "wasn't as bad as how y'all are saying it." The mother testified

3

that she had lived with the father at times and that I.R. had lived with the father since I.R. was a newborn. The mother also testified that she was surprised by the father's recent drug use.

The mother had a conviction for unauthorized use of a motor vehicle and a conviction for possession of a controlled substance in a correctional facility. The mother knowingly committed a criminal act that caused her incarceration, and she left I.R. in the father's care at his house while she was "on the run" from the police. The mother acknowledged that she knew the father "was going through some things" and testified that, after J.B. was born, she intended for the father's mother, who had both health and hoarding issues, to take care of the children.

The mother cites *In re C.D.E.*, 391 S.W.3d 287 (Tex. App.—Fort Worth 2012, no pet.), and *Walker v. Department of Family & Protective Services*, 251 S.W.3d 563 (Tex. App.—Houston [1st Dist.] 2006, no pet.), in support of her contention. While we agree that incarceration standing alone does not constitute endangering conduct, we find the cases relied on by the mother to be distinguishable because the evidence here shows more than mere incarceration. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533–34 (Tex. 1987) (termination may be upheld if the evidence, including imprisonment, shows a course of endangering conduct).

The evidence here showed a course of conduct committed by the mother that endangered her children. The mother took a controlled substance with her when she went to the county jail to visit someone. She later went "on the run" because she knew the police were looking for her. There was also evidence that the mother was involved with marihuana and cocaine.

The evidence also supports a finding that the mother knowingly placed the children in conditions or surroundings that endangered their physical or emotional well-being. The mother had lived in the father's house, and the record shows that

4

the conditions of that house were deplorable and unsafe for children. The father had been a hoarder all his life. Although the mother testified that, prior to her incarceration, she made the father clean some of the junk out of his house, other evidence indicated that the unsafe condition of the father's house predated the mother's incarceration.

We hold that the evidence is legally and factually sufficient to support the trial court's findings under Section 161.001(D) and (E) because the trial court could reasonably have formed a firm belief or conviction that the mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being. The mother's sole issue on appeal is overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT
CHIEF JUSTICE


October 31, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.